UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
                                                  Plaintiff,

                                                                                            Case # 10-CR-6096-FPG

v.

                                                                                           DECISION & ORDER

ANGELO CRUZ,

                                                Defendant.
_____

      By Text Order of Hon. Charles J. Siragusa, entered on March 11, 2011, this case was referred to United States Magistrate Judge Jonathan W. Feldman, pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  ECF No. 75.  As part of a Second Superseding Indictment involving multiple defendants and alleging a drug conspiracy occurring from 1993 through March 2, 2011 (ECF No. 268), Defendant Angelo Cruz has been charged with Counts 1 and 14 to wit, respectively: Narcotics Conspiracy in violation of 21 U.S.C. § 846 and Murder While Engaged in Drug Crime in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

      Defendant filed pre-trial motions (ECF Nos. 361, 397, 399), and the government filed papers in opposition to these motions (ECF No. 446, 458).  A suppression hearing was held on January 15, 2014 (ECF No. 536), and the Magistrate Judge heard arguments by the parties' attorneys, following which both parties filed supplemental briefs (ECF No. 637, 638).  In the instant Report and Recommendation filed on February 27, 2015 (ECF No. 654), the Magistrate Judge recommended that this Court deny Defendant's motion seeking to suppress statements made to police investigators and deny, without prejudice to renew, the motion to suppress four eyewitness identifications made from photo arrays, should Defendant decide to challenge the

independent basis non-stranger witnesses may have to identify Defendant at trial.[1]  *Id.*  The Magistrate Judge also denied Plaintiff's motion for a Bill of Particulars.  *Id.*

On March 16, 2015, Defendant filed his Objection to the Magistrate Judge's Report and Recommendation concerning Defendant's Motion to Suppress Statements ("Def.'s Objection") on the ground that, contrary to the Magistrate Judge's conclusion, he invoked his right to remain silent and never waived his right to remain silent.  Accordingly, Defendant argues, the resulting statements should be suppressed.  ECF No. 659.  On March 30, 2015, the government timely filed its Memorandum in Opposition to Angelo Cruz' Objection to Judge Feldman's Report and Recommendation Denying Cruz' Motion to Suppress ("Gov't Mem.") ECF No. 663.  The government takes the position that the Magistrate Judge's conclusions were correct and based upon proper interpretation of the applicable law.  *Id.*

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of the portion of the Magistrate Judge's Report and Recommendation to which an objection has been made.  Under this provision, "[a] judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  *Id*.  Upon a *de novo* review of the Report and Recommendation, and a review of Defendant's Objection to the Magistrate Judge's Report and Recommendation, the government's Memorandum in Opposition to the Defendant's Objections, the certified transcript of the suppression hearing held on January 15, 2015, the written post-hearing submissions of the parties, as well as their motion papers, I find no basis to alter, modify, or reject the Magistrate Judge's Report and Recommendation.

The facts adduced at the suppression hearing are not in real dispute, so I have set forth the salient ones in discussing Defendant's Objections.  During the suppression hearing, the

---

[1] This latter recommendation was made based on the absence of any objection on the part of defense counsel to the government's proposed disclosure of the identity of these witnesses at the pretrial conference or two weeks before trial, whichever date is earlier.  ECF No. 654.

government presented the testimony of two law enforcement witnesses, Erie County Sheriff's Department Detective Fred Vincent ("Det. Vincent") and Rochester Police Department Investigator Glenn Weather ("Inv. Weather"), both of whom had contact with the Defendant at the Rochester Police Department ("RPD") on June 16, 1999 in connection with a murder investigation concerning Francisco Santos whose body was found on the Cattaraugus Indian Reservation in May of 1999.  Tr. 3-54.  Defendant did not testify.

Det. Vincent testified that at approximately 3:30 P.M. on June 16, 1999, he alone met with Defendant, who was not handcuffed and seated at a table in an interview room at the RPD.  Tr. 15-16.  He introduced himself, and asked Defendant his name, which Defendant provided.  Tr. 17, 22.  Det. Vincent explained that he was investigating a homicide in Erie County, advised Defendant of the four *Miranda* rights verbatim using a laminated card he carried in his wallet, and asked the two waiver questions on the card, again, verbatim.  Tr. 16-18.  After Det. Vincent asked Defendant "Do you understand each of these rights I have explained to you?" Defendant did absolutely nothing, and upon being asked the second waiver question, "Having these rights in mind do you wish to talk to us now?" Defendant did not say or do anything in response, and just looked at him.  Tr. 18-19.  Det. Vincent testified as follows regarding Defendant's lack of response to his offer: "I would tell the D.A.'s office that he worked with me on the case, helping him out with the case" and that "I would go to bat for him with the District Attorney"; Defendant was "very cold" and Det. Vincent "knew [he] was getting no place with him," so he left the room.  Tr. 19, 23-24.

During this interview which lasted approximately 10 minutes, Defendant at no time asked for an attorney or indicated that he did not wish to speak with Det. Vincent; nor did Defendant appear to be in any physical discomfort; and Defendant did not appear to be intoxicated or smell of alcohol.  Tr. 19-23.  Det. Vincent testified that he did not physically or mentally abuse

Defendant in any way; did not see or speak to Defendant again once the interview was done; but did speak with RPD Inv. Galetta to inform him that he was getting no place with Defendant and that he "felt it was a dead end." Tr. 19-21. Inv. Galetta informed Det. Vincent he was going to talk to Defendant. Tr. 21.

Next, Inv. Weather testified that he entered the interview room at about 6:10 P.M. on June 16, 1999, after being asked to assist in the homicide investigation. Before entering the room he did not know to what extent Defendant had been interviewed, but had been made aware that Defendant had been advised of his *Miranda* rights and had waived them. Tr. 33, 44-47. Inv. Weather did not re-advise Defendant of his *Miranda* rights based upon this information. *Id.* Upon entering the room, Inv. Weather observed that Defendant was not handcuffed; appeared to be normal; did not appear to be intoxicated or under the influence of drugs; appeared to understand what was being said to him and responded accordingly; did not appear to be in physical distress or pain; and "was actually rather lucid." Tr. 33, 47. Inv. Weather testified that it didn't take too much to get Defendant to have a general conversation with him, and Defendant began speaking to him "right off the bat," "almost immediately." Tr. 47. After about 20 minutes alone with the Defendant, Inv. Weather was joined in the session by Inv. Pulatowski, partner of Det. Vincent, for about 10 minutes, after which Inv. Weather, again, alone, spoke to Defendant for about 20 minutes more. Tr. 34. When Pulatowski entered the interview room, he told Defendant that Inv. Weather "was a good guy, he could trust me"; Defendant, then "spoke a little bit more." Tr. 47.

At approximately 7:00 P.M., Inv. Baez joined Inv. Weather, and the two of them interviewed Defendant for about 25 minutes. Tr. 43. At approximately 7:25 P.M., Inv. Weather left the room and Inv. Baez interviewed Defendant alone for about a half hour. Tr. 43. From 7:55 P.M. to 8:00 P.M., Defendant was left alone; Inv. Baez returned for five minutes when

4

Defendant was provided a soda and some food. Tr. 43-44. Invs. Weather and Baez resumed questioning the Defendant at approximately 8:30 P.M. and continued until 9:20 P.M. Tr. 44. Inv. Weather testified that once the interview was completed, he and Inv. Baez brought Defendant to the Homicide Office, a larger room with about 10 desks, to type up the Defendant's statement. Tr. 34, 44. Un-handcuffed, Defendant sat next to Inv. Weather at his desk as Inv. Weather began typing the statement at 9:52 P.M. and continued typing as he and Defendant spoke. Tr. 34-35. Inv. Baez was close by. Tr. 35.

Once the document was completed, at 10:40 P.M., Inv. Weather read it aloud in its entirety from the computer screen, including the *Miranda* rights portion on the first page, and then printed it out at 10:50 P.M. and had Defendant read it aloud. Tr. 38. Upon being asked by Invs. Weather and Baez whether the printed statement was correct, Defendant made one addition on the first line, which was added, and he initialed it. Tr. 36. Inv. Weather testified that they started speaking with Defendant at 6:10 P.M., and he signed the statement at 11:05 P.M., with the interview lasting a little under five hours. Tr. 37-38.

Inv. Weather further testified that at no point during his encounter with him did the Defendant request a lawyer or request to stop speaking with him or any of the other officers; that Defendant did not appear intoxicated, his answers were responsive to the questions; and he spoke in English without any difficulty understanding. Tr. 38-39. Inv. Weather testified that he never physically or mentally abused Defendant, nor ever screamed at or threatened him. *Id.* He also testified that at no time did Inv. Baez advise him that Defendant invoked his right to an attorney or to remain silent, or indicated that he didn't want to talk to her; and Inv. Baez did not scream at Defendant in his presence. Tr. 39.

Objecting to the recommendation against suppression, Defendant first acknowledges that the facts adduced at the hearing have been set forth in his post-hearing submissions and in the

5

Magistrate Judge's Report and Recommendation. He asserts as the basis of his objection that: (1) "[w]hen advised of his rights by Officer [Vincent], Defendant said nothing whatsoever," thereby, invoking his right to remain silent; and (2) Defendant did not waive his right to remain silent, and "[m]any hours later, Officer Weather, having been incorrectly advised that [Defendant] had waived his rights, went in and began to speak to [Defendant] as if [Defendant] had actually waived."

The government takes the position that the Magistrate Judge correctly determined that Defendant's statement to Inv. Weather should not be suppressed because after being properly advised of his *Miranda* rights by Det. Vincent, Defendant never expressly or implicitly invoked those rights, and by subsequently speaking with Investigator Weather and answering his questions, Defendant waived his *Miranda* rights. Furthermore, the government states, the Magistrate Judge properly found that the Supreme Court's decision in *Berghuis v. Thompkins*, 560 U.S. 370 (2010) governs in the Defendant's circumstances.

As the Magistrate Judge aptly observed, "[i]t is well settled that police may not interrogate a suspect who has been taken into custody without first advising him of his *Miranda* rights," *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004), and it is only in the context of a custodial interrogation that a defendant must be informed of his *Miranda* rights, *Dickerson v. United States*, 530 U.S. 428, 434-35 (2000). Here there is no dispute regarding whether Defendant was in custody at the time he made the statement at issue, or that prior to making such statement Defendant was properly advised of his *Miranda* rights. Thus, the issue here is whether the resulting inculpatory statement should be admissible, a determination which depends upon whether Defendant validly waived his right to remain silent.

The burden of proving by a preponderance of the evidence that a valid waiver occurred lies with the government. *United States v. Murphy*, 703 F.3d 182, 192 (2d Cir. 2012) (citing

*Berghuis v. Thompson*, 560 U.S. 370 (2010); *United States v. Male Juvenile*, 121 F.3d 34, 39 (2d Cir. 1997)). Furthermore, to establish a valid waiver of *Miranda* rights, "the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (per curiam) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

*Miranda* "does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." *Berghuis v. Thompkins*, 560 U.S. at 385 ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."). Thus, an express waiver of *Miranda* rights is not required, and an implicit waiver may be inferred from the defendant's conduct. *Id*. "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Id.* at 384 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "[T]he question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Butler,* 441 U.S. at 373.

I agree with the Magistrate Judge that *Berghuis* applies to and is controlling over both of Defendant's contentions. To start with, Defendant was properly advised of his *Miranda* rights by Det. Vincent who first ascertained from the Defendant his name. Regarding the fact that Defendant said "nothing whatsoever" after having been advised of his *Miranda* rights by Det. Vincent, Defendant himself acknowledges that silence in and of itself is not an assertion of the right to remain silent. Under *Berghuis*, an accused who wants to invoke his or her right to remain silent must do so "unambiguously." *Berghuis*, 560 U.S. at 381. Defendant does not

7

contend based on the facts presented at the hearing that he said he wanted to remain silent or that he did not wish to talk to the police. As *Berghuis* makes clear, "[h]ad [Defendant] made either of these simple, unambiguous statements he would have invoked his right to cut off questioning." *Id.* at 382. I find that Defendant did not unambiguously invoke his right to remain silent. The Magistrate committed no error in this regard.

In the absence of an unambiguous invocation of the right to remain silent, the police were not precluded from continuing to question Defendant and were not required to clarify whether by being silent he was invoking the right to remain silent. Defendant's contention that Inv. Weather's mistaken belief about Defendant's earlier waiver of those rights, at the very least, required him to re-advise Defendant respecting these rights before proceeding to question him is without merit.

I also find, as did the Magistrate Judge, that the record establishes that Defendant voluntarily and knowingly waived his right to remain silent. With respect the question of voluntariness, the suppression hearing record is devoid of any evidence that any law enforcement officer threatened, coerced, intimidated, or deceived Defendant to get him to speak with them. Moreover, during the interviews, Defendant did not appear intoxicated, under the influence of drugs, or in any physical discomfort.

Importantly, there is no contention that Defendant did not understand his *Miranda* rights, nor is there any basis in the record from which to conclude that he did not understand his rights. Defendant's appropriate response to Det. Vincent's inquiry about his name provided an indication that Defendant understood English. At no time during the rights advisement did Defendant state, or otherwise indicate, that he lacked such understanding. On this record, no lack of understanding is suggested from the fact that Defendant did not acknowledge or respond

to Det. Vincent's waiver questions or to Det. Vincent's offer to help him out with the District Attorney.

Furthermore, when Inv. Weather interviewed him a short time later, Defendant had no difficulty understanding what was being said to him, engaged in conversation with Inv. Weather "right off the bat," "almost immediately," and eventually gave a statement, the printed version of which contained the *Miranda* warnings, all of which he read aloud and signed.  In the absence of any proof in the record that such statement was the product of coercion or otherwise involuntarily obtained, such behavior was inconsistent with the exercise of his *Miranda* rights and indicative of a deliberate choice to relinquish the protections those rights afforded. *Berghuis*, 560 U.S. at 385.

The Magistrate Judge properly found, based upon "the whole course of questioning" by law enforcement, that the government demonstrated by a preponderance of the evidence that Defendant was given *Miranda* warnings which he understood, did not invoke his *Miranda* rights, and then waived the right to remain silent and gave a voluntary statement to Inv. Weather.  The recommendation to deny the Defendant's Motion to Suppress his statements made on June 16, 1999 reflects a well-reasoned analysis of the facts and application of the relevant law. Accordingly, the Court accepts and adopts the Report and Recommendation filed by United States Magistrate Judge Jonathan W. Feldman.  ECF No. 654.  As set forth herein above, Defendant's pre-trial motions to suppress statements (ECF Nos. 397, 399) is hereby denied.

    IT IS SO ORDERED.

Dated: April 29, 2015
      Rochester, New York

                                    s/Frank P. Geraci, Jr.
                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court